IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Equal Employment Opportunity Commission<br>  GH Fallon Federal Building<br>  31 Hopkins Plaza, Suite 1432<br>  Baltimore, MD 21201<br>       Plaintiff,<br><br>v.<br><br>Chesapeake Montessori Foundation, Inc. d/b/a Chesapeake Montessori School<br>  30 Old Mill Bottom Road<br>  Annapolis, Md 21401<br>       Defendant. | Civil Action No.  23-cv-02455<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action brought under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Michelle Washington who was adversely affected by such practices. As is alleged with greater particularity in the Statement of Claims below, Chesapeake Montessori Foundation, Inc., which operates Chesapeake Montessori School, discriminated against Ms. Washington in violation of the ADA when it refused to (re)hire Ms. Washington as a primary teacher because of her daughter's disability.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of

the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper in the United States District Court for the District of Maryland as the employment practices alleged to be unlawful were committed within the jurisdiction of this Court.  *See* 42 U.S.C. § 12117(a), incorporating 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1), (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

4. Defendant, Chesapeake Montessori Foundation, Inc., is a Maryland corporation headquartered and continuously doing business in Annapolis, Maryland.

5. Chesapeake Montessori Foundation, Inc. operates Chesapeake Montessori School, an independent educational institution with its campuses in Annapolis, Maryland.

6. At all relevant times Defendant has continuously had at least 15 employees.

7. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7).

8. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

10. More than thirty days prior to the institution of this lawsuit, Ms. Washington filed a Charge of Discrimination with the EEOC alleging violations of the ADA by Defendant.

11. Following the EEOC's investigative process, the agency issued a Letter of Determination dated March 4, 2022 notifying Defendant that there was reasonable cause to believe that it had violated the ADA based on Ms. Washington's association with her disabled daughter.

12. EEOC's Letter of Determination invited Defendant to join with EEOC in informal methods of conciliation to endeavor to eliminate the discrimination found to have occurred.

13. EEOC provided Defendant with proposed terms for settlement and engaged in communications with Defendant concerning settlement.

14. EEOC was unable to secure a conciliation agreement on terms acceptable to the Commission.

15. EEOC issued to Defendant a Notice of Conciliation Failure dated July 26, 2022.

## **DISCRIMINATION IN VIOLATION OF THE ADA**

16. Since at least 2021 Defendant has engaged in unlawful employment practices in violation of Sections 102(a) and (b)(4) of Title I of the ADA, 42 U.S.C. §§ 12112(a), (b)(4). These practices include failing to (re)hire Ms. Washington as a primary teacher because of her daughter's known disability.

17. Ms. Washington's daughter was diagnosed with cystic fibrosis shortly after birth in 2008.

18. Cystic fibrosis is a genetic condition that affects a protein in the body and disrupts the body's cells, tissues, and glands that make mucus and sweat, resulting in the production of unusually thick mucus that damages and prevents the normal functioning of organs, primarily the lungs and pancreas.

19. Ms. Washington's daughter's cystic fibrosis is a physical impairment that substantially limits one or more of her major life activities, including breathing, eating, maintaining weight and

processing foods and nutrients, exerting energy, and exercising or engaging in physical or strenuous activities, as well as substantially limiting the major bodily functions of her digestive, endocrine, and respiratory systems and operation of her lungs and pancreas.

20. In or about 2017, Ms. Washington's daughter was also diagnosed with dyslexia and Attention Deficit Hyperactivity Disorder (ADHD), mental impairments that substantially limit her in one or more of her major life activities including learning, reading, comprehension, focus, and concentration.

21. Ms. Washington's daughter was enrolled as a student with Defendant every year from approximately 2011 until 2021, when Defendant did not (re)hire Ms. Washington.

22. Ms. Washington's daughter's disabilities resulted in special planning and recordkeeping with Defendant, including submission and maintenance of medical background forms, medication dispensing plans, emergency action plans, and specialized education plans all relating to and disclosing Ms. Washington's daughter's physical and mental impairments.

23. At all relevant times, Ms. Washington's daughter was an individual with a disability within the meaning of the ADA.

24. Since at least 2011, Defendant has known of Ms. Washington's daughter's disabled status.

25. Since at least 2011, Defendant has known of the familial relationship between Ms. Washington and her daughter.

26. Defendant operates a private school comprised of a young children's community, primary community, elementary community, and adolescent community, with each community serving progressive age cohorts.

27. Ms. Washington began her affiliation with the Montessori community and pedagogical philosophy in 2001 as an assistant at another Montessori school.

28. In or about 2007 Defendant hired Ms. Washington as a teacher's assistant and (re)hired her and renewed her contract in each successive year until 2015, when Ms. Washington took time off to advance her education.

29. In or about 2015 Ms. Washington earned her master's degree in education and her Association Montessori Internationale (AMI) primary teacher certification at the Washington Montessori Institute.

30. In or about 2016, Defendant hired Ms. Washington as a primary teacher, a full faculty position, for the 2016/2017 school year.

31. Defendant employs its faculty and staff pursuant to non-renewing annual contracts covering a single school year, and all employees must be (re)hired pursuant to a new contract for each successive school year.

32. Defendant normally offers its faculty and staff their employment contracts in spring prior to the respective school year.

33. Defendant (re)hired Ms. Washington as a primary teacher for, respectively, the 2017/2018, 2018/2019, 2019/2020, and 2020/2021 school years.

34. Ms. Washington was qualified for the primary teacher position with Defendant.

35. Throughout her employment as a primary teacher with Defendant Ms. Washington satisfactorily performed her duties in the position.

36. In February 2020, as in years past, Defendant offered Ms. Washington a contract for (re)hire as a primary teacher for the 2020/2021 school year.

37. The 2020/2021 agreement between Defendant and Ms. Washington provides that Defendant "employs [Ms. Washington] for the school year" and that "[t]his agreement contains no

5

automatic renewal provisions.  A separate and new agreement must be negotiated for each school year."

38. The 2020/2021 agreement between Defendant and Ms. Washington further provides that Ms. Washington's employment "begins on August 17, 2020 and ends on June 9, 2021….".

39. In March of 2020 the COVID pandemic forced Defendant to shift to 100% remote instruction.

40. In response to the COVID pandemic, for the 2020/2021 school year beginning in Fall of 2020, Defendant created a hybrid educational program and offered parents the option of remote or in-person instruction for students.

41. Defendant's hybrid educational program required that a teacher be assigned to provide remote instruction in each of Defendant's respective communities for those students participating in remote learning.

42. Defendant employed three teachers in the primary community for the 2020/2021 school year: Ms. Washington, Paige Edwards, and Shandra Dohoney.

43. Robb Wirts, Defendant's Head of School, requested that Ms. Washington serve as the remote teacher for the primary community during the 2020/2021 school year.

44. For the 2021/2022 school year, Defendant resumed full in-person instruction.

45. On or about February 20, 2021, Mr. Wirts e-mailed Ms. Washington to set-up a meeting to discuss "what next year holds at [Defendant] and your thinking about your family's return."

46. On or about February 22, 2021, Defendant extended formal contracts to (re)hire Paige Edwards and Shandra Dohoney as primary teachers for the 2021/2022 school year.

6

47. On or about February 22, 2021, Mr. Wirts and Ms. Washington had a phone call wherein Ms. Washington expressed that she was expecting and fully prepared to resume teaching in-person with Defendant in the 2021/2022 school year.

48. During that call Mr. Wirts asked Ms. Washington about her daughter's cystic fibrosis and Ms. Washington's plan for her daughter when Defendant returned students to full in-person education in the upcoming school year. Ms. Washington explained that she expected her daughter would be returning in-person as a student with Defendant, but that she also had contingency plans if needed. Ms. Washington assured Mr. Wirts that in no event would her daughter's condition affect her own return in-person or ability to perform her teaching duties in the upcoming 2021/2022 school year.

49. During or shortly after their February 22, 2021, conversation Mr. Wirts notified Ms. Washington that Defendant was eliminating a primary teaching position and, of the three primary teachers, Defendant would not be extending an offer to (re)hire Ms. Washington for the 2021/2022 school year. Mr. Wirts indicated he would explore possible alternate positions for Ms. Washington.

50. At the time, Ms. Washington had more experience in the Monetssori community and more years of employment with Defendant than either Ms. Dohoney or Ms. Edwards.

51. At the time, Ms. Washington had more experience and tenure as a primary teacher with Defendant than Ms. Edwards.

52. At the time, upon information and belief, neither Ms. Dohoney nor Ms. Edwards was the parent of a child with a disability known to Defendant.

53. In or about May 2021, Mr. Wirts contacted Ms. Washington by phone to verbally discuss the possibility of hiring Ms. Washington for the 2021/2022 school year as a primary float - a

non-faculty, non-teaching, support staff position with materially different pay, hours and duties than the primary teaching position.

54. Ms. Washington asked Mr. Wirts why he decided not to (re)hire her as a primary teacher, as opposed to Ms. Dohoney or Ms. Edwards. Mr. Wirts stated it was not performance related. Instead, Mr. Wirts explained he didn't think Ms. Washington could fully commit to her teaching position in the upcoming year because of her daughter's cystic fibrosis and COVID.

55. The effect of the practices complained of in paragraphs 16-54 above has been to deprive Ms. Washington equal employment opportunities and otherwise adversely affect her employment status because of the known disability of an individual with whom Ms. Washington has a relationship or association.

56. The unlawful employment practices complained of in paragraphs 16-54 above were intentional.

57. The unlawful employment practices complained of in paragraphs 16-54 above were done with malice or with reckless indifference to Ms. Washington's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

      A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns, and all persons in active concert or participation with Defendant, from engaging in disability discrimination against qualified applicants and employees, including on the basis of the known disability of an individual with whom the applicant or employee is known to have a relationship or association, and engaging in any other employment practices that discriminate on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities to qualified individuals with disabilities and to qualified applicants or employees who have a relationship or association with an individual with a known disability, and that eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Ms. Washington whole by providing appropriate back pay and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant to make Ms. Washington whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including any out-of-pocket losses, in amounts to be determined at trial.

E. Order Defendant to make Ms. Washington whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional and mental anguish, pain and suffering, stress, loss of enjoyment of life, humiliation, and frustration in amounts to be determined at trial.

F. Order Defendant to pay Ms. Washington punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

G. Grant such further legal or equitable relief as the Court deems necessary and proper to the public interest.

H. Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

/s/ Debra M. Lawrence
DEBRA M. LAWRENCE
Regional Attorney

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Assistant Regional Attorney

THOMAS D. RETHAGE
Senior Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
801 Market St., Suite 1000
Philadelphia, PA 19107
thomas.rethage@eeoc.gov
Phone: 267-589-9756
D. Md. #96035